IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD T. EDWARDS, | ) | |
| | ) | |
| Claimant, | ) | No. 14 CV 1345 |
| | ) | |
| v. | ) | Jeffrey T. Gilbert |
| | ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant Reginald T. Edwards ("Claimant") brings this action under 42 U.S.C. § 405(g) against Respondent Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), seeking review of the Commissioner's decision to deny Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 13.]

Claimant moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. [ECF No. 17.] The Commissioner also moved for summary judgment. [ECF No. 25.] For the reasons stated below, Claimant's Motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. This matter is remanded to the Social Security Administration ("SSA") for further proceedings consistent with this Memorandum Opinion and Order.

1

## I. PROCEDURAL HISTORY

On August 24, 2011, Claimant filed an application for DIB, alleging a disability onset date of August 30, 2011. (R. 143-144.) The SSA denied the application initially on October 20, 2011 and upon reconsideration on January 17, 2012. (R. 58-59.) Claimant then requested a hearing before an administrative law judge ("ALJ"), which was held on October 25, 2012. (R. 33-57, 76-77.) At the hearing, Claimant, who was represented by counsel, appeared and testified. (R. 33-57.) A vocational expert ("VE") also testified at the hearing. *Id.*

On November 30, 2012, the ALJ issued a written decision. (R. 18-26.) In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Social Security Act. (R. 26.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since the alleged onset date. (R. 20.) At step two, the ALJ found that Claimant had the severe impairments of bipolar disorder and generalized anxiety order. *Id.* At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 20-21.)

Before proceeding to step four of the sequential process, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but had a few nonexertional limitations. (R. 21.) Claimant was limited to understanding, remembering, and carrying out simple one and two step instructions that do not require interaction with the general public; and no more than occasional, non-collaborative interaction with coworkers and supervisors. *Id.*

At step four, the ALJ found Claimant was unable to perform any of his past relevant

work. (R. 2.) At step five, however, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 25-26.) Specifically, the ALJ found Claimant could work as a Janitor, Laundry Worker, or Sorter. *Id.* Because of these determinations, the ALJ concluded that Claimant was not under a disability as defined in the Social Security Act at any time from his alleged onset date to the date last insured. (R. 26.)

Claimant sought review of the ALJ's decision with the Social Security Appeals Council, which was denied on December 30, 2013, making the ALJ's opinion the final decision of the Commissioner. (R. 1-3.) Claimant seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). While the ALJ is not required to address "every piece of evidence or testimony in the record," the analysis

"must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). At a minimum, the ALJ must articulate her analysis "with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

### III. DISCUSSION

Claimant asserts that the decision of the Commissioner should be reversed because the ALJ's RFC determination failed to include all of Claimant's limitations and was not supported by substantial evidence. Specifically, Claimant argues that the ALJ erred in three ways. First, the ALJ failed to consider and evaluate the medical opinion of Dr. Shabbir Zarif, one of Claimant's treating psychiatrists. Second, the ALJ improperly discounted the medical opinion of Claimant's other treating psychiatrist, Dr. Abid Nazeer, and inadequately explained her rationale for doing so. Third, the ALJ failed to translate her finding that Claimant had moderate limitations in concentration, persistence, and pace, into the detailed, function-by-function analysis required for a proper RFC determination. The Court agrees that the ALJ failed to consider and evaluate Dr. Zarif's medical opinion. The Court further finds that the ALJ improperly discounted the opinion of Dr. Nazeer. Because each of these errors require reversal, the Court declines to address the final alleged error at this time.

**1. The ALJ Failed to Consider and Evaluate the Medical Opinion of Dr. Zarif.**

Claimant has a documented history of bipolar disorder. (R. 354.) His psychiatric history dates back to 1979 when he was 16 years old, and he has had multiple psychiatric hospitalizations since. *Id.* Claimant was first prescribed medication for his disorder in 2004

4

after he sought treatment at Riverside Hospital for severe depression, insomnia, lack of concentration, feelings of helplessness, and overall stress. (R. 354, 359.) After 2004, the next record of Claimant's psychiatric treatment is from 2010.[1] (R. 261.) Claimant was seeing his psychiatrist, Dr. David Schilling, regularly throughout 2011. *Id.* On September 11 of that year, Claimant presented with complaints of suffering from anxiety, mental stress, irritability, and racing thoughts, all of which became more severe while working as a CTA bus driver. *Id.* Claimant also testified that in August of 2011 his symptoms became so severe that he "couldn't take [his job] any more." (R. 38.)

Claimant then received psychiatric treatment from Dr. Zarif on November 6 and 30 of 2011. (R. 323, 326.) On December 28, 2011, Dr. Zarif produced a letter to the SSA where he stated that Claimant's "length of illness, worsening symptomatology and associated cognitive changes [sic] has resulted in [Claimant's] reduced ability to function productively in the community." (R. 316.) Dr. Zarif also produced a medical source statement ("MSS") shortly after on January 9, 2012, where he opined that Claimant had serious limitations in his ability to perform tasks on a sustained basis without undue interruptions or distractions; to understand, carry out and remember instructions on a sustained basis; to respond appropriately to supervision, coworkers and customary work pressures; to perform task on an autonomous basis without direct step-by-step supervision and direction; and to independently initiate, sustain, or complete tasks. (R. 321-22.)

The ALJ only mentions Dr. Zarif in her opinion once. (R. 22.) The ALJ's discussion of Dr. Zarif is limited to one paragraph where she recites a select portion of Dr. Zarif's medical

---

[1] The ALJ misstates the record concerning Claimant's treatment timeline in 2011. The ALJ states that the first record of Claimant's psychiatric treatment after 2004 was when Claimant sought a refill of Ambien in June 2011. This is inaccurate. In actuality, Claimant sought the refill in October 2011. Dr. Schilling's progress notes going back to 2010 would therefore be the first time the record indicates Claimant was receiving psychiatric treatment since 2004.

5

notes. *Id.* The recitation includes notes stating that "claimant was alert, oriented, and cooperative[,]" that "[a]ffect was somewhat anxious and tense and edgy but appropriate and related[,]" that Claimant was "aware of his racing thoughts, lack of sleep and tendency to anger[,]" and that Claimant "reported no psychotic symptoms." *Id.* The ALJ also noted that Dr. Zarif diagnosed Claimant with bipolar disorder and generalized anxiety disorder, and that "on follow-up [Claimant] was generally okay, but still tense, easily distressed and having dizzy spells." *Id.* The ALJ, however, never mentions Dr. Zarif's MSS, nor does she give an explanation of what weight was given to Dr. Zarif's opinions. The Commissioner concedes this fact. *See* ECF. No. 25. at p. 6 ("Although the ALJ did not, as Edwards asserts, specifically mention this assessment by Dr. Zarif, the ALJ did consider Dr. Zarif's treatment records and his reported medical findings[.]"). The ALJ's discussion is not an adequate evaluation of a treating physician's opinion.

The ALJ's treatment of Dr. Zarif's opinion is flawed for two reasons. First, the ALJ fails to ever mention Dr. Zarif's MMS. Social Security regulations require an ALJ to consider all relevant evidence in the record, including medical opinions. 20 C.F.R. § 404.1527(c); *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); *see also* SSR 96-5 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored . . . The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."). Because "an ALJ may not ignore an entire line of evidence that is contrary to her findings[,]" the Commissioner's concession that the ALJ never mentions Dr. Zarif's MSS alone warrants reversal. *Henderson v. Apfel,* 179 F.3d 507, 514 (7th Cir. 1999).

6

However, the ALJ's treatment of Dr. Zarif's opinion is flawed for another reason. Not only does the ALJ fail to mention the MSS, but she also fails to weigh or analyze Dr. Zarif's medical findings and opinion. "Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Regardless of what weight, if any, is given to a claimant's treating physician's opinion, the regulations mandate that an ALJ always give good reasons in her written decision for how she made the weight determination. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir.2011); 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons . . . for the weight we give your treating source's opinion."); 20 C.F.R § 416.927; *see also* SSR 96-2 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion . . . and must be sufficiently clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Although it is unnecessary for an ALJ to provide a complete written evaluation of every medical opinion in the record, she does have an obligation to articulate enough analysis in her opinion to build an accurate and logical bridge from the evidence to her conclusion. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013); *Berger*, 516 F.3d at 544. When an ALJ does not make any weight determination with respect to a treating physician's opinion, she fails to "minimally articulate [her] reasons for crediting or rejecting evidence of disability . . . and failure to do so constitutes error." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992)). As discussed above, the ALJ only mentions a select portion of Dr. Zarif's medical notes and then moves on. At no time does she make a weight determination concerning Dr. Zarif's medical findings and opinion. The failure to do so is error.

The Commissioner does not argue that the ALJ gave adequate reasons for rejecting Dr. Zarif's MSS. Rather, the Commissioner concedes that the MMS was never addressed by the ALJ. Instead, the Commissioner argues that the underlying evidence from Dr. Zarif's treatment records is inconsistent with his MSS. The Commissioner's argument is flawed as the ALJ never said that Dr. Zarif's medical records were inconsistent with his MSS. Indeed, the ALJ could not have made such a statement because she never mentions the MSS in her decision. It is the ALJ's duty to rationally articulate the grounds for her decision. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Courts typically confine their review to the rationale supplied by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Here, the ALJ supplied no rationale for discrediting Dr. Zarif's opinion. As such, the Commissioner's argument about what the ALJ may have been thinking would likely be precluded by the Chenery Doctrine. *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943).

Even if the argument is not precluded, the ALJ still failed to consider Dr. Zarif's MSS and never gave an explanation of what weight she gave to his opinion. It appears that the Commissioner believes this was harmless error. An ALJ, however, is generally directed to give a treating physician's opinion greater weight than that of a non-treating physician. 20 C.F.R. 404.1527(c)(1); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The opinions of treating physicians are considered so important because "they are likely to be the medical professionals most able to provide a detailed, longitude picture" of the claimant's medical impairments and offer "a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Id.* § 404.1527(c)(2). This is exactly why an ALJ cannot completely ignore the opinion of a treating source. *Henderson v. Barnhart*, 205 F. Supp. 2d 999, 1013 (E.D. Wis. 2002).

Here, both Dr. Zarif's MMS and his treatment notes evidenced the severity of Claimant's condition. In Claimant's first visit, Dr. Zarif noted that "he clearly seems to have these episodes of heightened anger, energy, spending too much and getting angrier[,]" he "seems unable to relax or calm down and seems to be on edge all the time[,]" he "clearly screens for hypomania and manic features[,]" he is "not able to process too much[,]" and that he "[s]eemed at times forgetful and distracted." (R. 323-25.) As discussed above, Dr. Zarif's MMS directly contradicted the ALJ's RFC. Even if Dr. Zarif's opinion was not given controlling weight, "the ALJ was not permitted to simply discard it." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). Therefore, the Court cannot say that the ALJ's failure to consider Dr. Zarif's MMS and to explain what weight his opinion was given was harmless. In light of these errors, remand is warranted.

### 2. The ALJ Improperly Discounted the Medical Opinion of Dr. Abid Nazeer

Claimant began seeking psychiatric treatment on a monthly basis from Dr. Abid Nazeer in April 2012. (R. 369, 385.) In October of that year, after treating Claimant for seven months, Dr. Nazeer completed a MSS. (R. 371-76.) There, Dr. Nazeer noted that Claimant's response to "medication management and supportive psychotherapy . . . was partial as many active symptoms persist." (R. 371.) Dr. Nazeer further stated that Claimant "has been observed to [be] intrusive and obsessive, he can become irritable/angry, [and] symptoms are severe, with racing thoughts/paranoia." *Id.* Dr. Nazeer found that Claimant had a moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence or pay; and one or two episodes of decompensation. (R. 372-75.) The final prognosis was "poor—since this is a chronic illness." (R. 371.)

The ALJ gave Dr. Nazeer's opinion "minimal weight" because Dr. Nazeer "ha[d] not been treating claimant for years . . . and his opinions [were] based largely on the claimant's subjective reports," which the ALJ found less than fully credible. (R. 24.) The ALJ, however, does not explain how he concluded that Dr. Nazeer relied on Claimant's self-reports when making his medical findings. Dr. Nazeer's records do not indicate that he was relying *largely* on Claimant's subjective complaints. Although some of Dr. Nazeer's progress notes state that he spoke with Claimant over the phone, the majority of the notes indicate that Claimant was "seen/evaluated," or given a full psychiatric exam. (R. 337-38, 340-41, 348-50, 382-85.) Thus, the ALJ's determination on this issue appears to be entirely speculative.

Even if there was an indication in the record that Dr. Nazeer relied primarily on Claimant's subjective complaints, however, the ALJ would still be ignoring the fact that a patient's subjective reports play a particularly important role in assessing mental conditions. *Hampton v. Colvin*, 2013 WL 6577933, at *7 (N.D. Ill. Dec. 13, 2013). Psychiatrists rely on information provided by patients in assessing and treating them. *Lucas v. Astrue*, 2013 WL 3934221, at *7 (N.D. Ill. July 20, 2013). Indeed, the ALJ criticizes Dr. Nazeer's MSS for listing possible side effects of Claimant's medications when they had never been reported by Claimant. (R. 24.) The ALJ thus appears to be impermissibly playing doctor. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). The Commissioner does not defend this basis for discounting Dr. Nazeer's opinion.

The ALJ also found that Dr. Nazeer's MSS was inconsistent with his own treatment records. (R. 24.) The ALJ relies heavily on two of Dr. Nazeer's progress notes from Claimant's May 1 and September 25, 2012 mental examinations, where Dr. Nazeer noted "appropriate effect, euthymic mood, organized thought process, and no hallucinations or delusions." (R. 23,

348, 382.) However, "the ALJ's analysis reveals an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir.2010); *Bauer*, 532 F.3d at 609. The fact that Claimant appeared well-oriented during two mental examinations is not clearly inconsistent with Dr. Nazeer's MMS. (R. 371-76.)

Further, the ALJ's characterization of Dr. Nazeer's own treatment records as being inconsistent with his MMS is not borne out in the record. On April 9, 2012, Dr. Nazeer noted that Claimant was having "flashing, palpitation, and insomnia" from his medication. (R. 384.) On June 11, 2012, Dr. Nazeer noted that Claimant "still has episodes of agitation towards his wife" and "[has] been unable to work for three years—[he] is disabled but [has] never applied." (R. 383.) On August 7, 2012, Dr. Nazeer noted that Claimant was "still having racing thoughts, anger, [and] mood swings." *Id.* On August 29, 2012, Dr. Nazeer stated that Claimant's medication was helping but was making him sluggish. *Id.*

The ALJ also deprecated Dr. Nazeer's medical opinion because she found it inconsistent with other substantial evidence in the record. Specifically, the ALJ concluded that Claimant received minimal treatment for his condition and that his symptoms were being controlled by medication. (R. 23-24.) Although there is a gap in medical treatment following Claimant's 2004 hospital visit, the record is clear that Claimant saw Dr. Schilling regularly from 2010 until November 2011, at which time he switched over to Dr. Zarif. (R. 261 323.) Claimant then started seeing Dr. Nazeer on a monthly basis beginning in April 2012. (R. 369, 385.) The Court does not find at least one and a half years of regular treatment to be so "minimal" as to justify rejection of

a treater's opinion, as the ALJ did here. *See Scott,* 647 F.3d at 740 (finding treatment on a monthly basis for over a year favors crediting a treating physician's assessment).

Further, to support the proposition that Claimant's symptoms were being controlled by medication, the ALJ repeatedly cites to a letter drafted by Dr. Nazeer, submitted approximately two weeks before his MSS was completed, in which he states that "[t]he majority of [Claimant's] symptoms are controlled by medication . . . ." (R. 23-24, 369.) Dr. Nazeer further states, however, that "residual symptoms persist" and that it is his "professional opinion that Mr. Edwards is permanently disabled due to his Psychiatric Illness." (R. 369.)[2] Finally, Dr. Nazeer indicates in his MMS that Claimant's medications were causing sedation, dizziness, fatigue, nausea, and relentlessness. (R. 371.) This is in fact consistent with his August 2012 note that Claimant's medications were making him sluggish. (R. 383.)

These notes are not clearly inconsistent with Dr. Nazeer's determination that Claimant had a moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence or pay; and one or two episodes of decompensation. (R. 372-75.) As noted above, a patient who suffers from bipolar disorder experiences fluctuating symptoms, and just because the patient has a good day does not mean that the condition has been treated. *Scott,* 647 F.3d at 740; *see also McKinney v. Colvin,* 2014 WL 7332831, at *3 (N.D. Ill. Dec. 22, 2014) ("[A] patient who suffers from a chronic condition and who undergoes years of treatment is bound to have good days and bad days."). As Dr. Nazeer noted, Claimant suffers from a chronic illness and his response to treatment was "partial as many active symptoms persist." (R. 371.)

---

[2] This is directly aligned with the findings of Dr. Zarif, who concluded that Claimant's "length of illness, worsening symptomatology and associated cognitive changes [sic] has resulted in [Claimant's] reduced ability to function productively in the community." [R. 316.]

"If the ALJ concludes that the treating physician's opinion is inconsistent with other evidence, she must explain the inconsistency." *Frobes v. Barnhart,* 467 F. Supp. 2d 808, 819 (N.D. Ill. 2006). Here, the ALJ has read inconsistency into Dr. Nazeer's notes too quickly, and her conclusions are speculative at best. "There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott,* 647 F.3d at 739. Dr. Nazeer's notes show that Claimant's symptoms persisted even though medication helped. The ALJ has impermissibly "cherry-picked" from the mixed results in Dr. Nazeer's notes to support a denial of benefits. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010). She essentially "substituted her own judgment for that of [Claimant's] treating physician . . . or in other words, she played doctor." *Singleton v. Astrue,* 2008 WL 425528, at *6 (N.D. Ind. Feb. 13, 2008); *see also Rohan v. Chater,* 98 F.3d 966, 968 (7th Cir. 1996). This error also merits remand.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF No. 17] is granted and the Commissioner's motion for summary judgment [ECF No. 25] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 29, 2016